[S. F. No. 1221. Department One.—March 31, 1900.]

GLENMORE DISTILLING COMPANY, Appellant, v. C. W. CRAIG, Respondent.

ACTION FOR GOODS SOLD—MODIFICATION OF CONTRACT—REBATE FROM PRICE—AUTHORITY OF AGENT—CONFLICTING EVIDENCE—REVIEW UPON APPEAL.—In an action for goods sold and delivered, where a rebate from the agreed price is shown to have been made by an agent of the plaintiff in modification of the contract of sale, and the evidence was conflicting as to the authority of the agent so to modify the contract, a judgment upon a waiver of findings, which in effect found in favor of the rebate, cannot be disturbed upon appeal.

ID.—REFUSAL TO ADMIT DEPOSITIONS—CONTENTS NOT SHOWN—STIPULATION—HARMLESS RULING.—The refusal to admit depositions taken under a commission issued to a notary public named because the commissioner failed to state in his certificate that he was a

notary public does not appear to be prejudicial, where the transcript does not show the contents or materiality of the depositions; and where it was stipulated at the trial that one of the witnesses, who was president of the plaintiff corporation, would testify that he gave no authority to the agent to modify the original contract of sale from plaintiff to defendant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

J. J. Scrivner, for Appellant.

Rothchild & Ach, for Respondent.

VAN DYKE, J.—The plaintiff brought suit against the defendant for the sum of three thousand nine hundred and twenty-four dollars and ninety-six cents, the amount of Kentucky whiskies sold and delivered to the defendant in San Francisco. The court below awarded judgment for the plaintiff in the sum of six hundred and seventy-four dollars and ninety-six cents only, and from that judgment and from the order denying plaintiff's motion for a new trial, the plaintiff appeals. The questions involved in the case are quite succinctly stated in a stipulation entered into in open court during the trial of the cause. The respective counsel had stated previously what might be considered as admitted or proven: "Thereupon, it was further stipulated by and between counsel for plaintiff and defendant in open court, that the plaintiff is, and was at the time of the delivery of said whiskies, a corporation, duly organized and existing under the laws of the state of Kentucky; and that there was no controversy as to the amount of whisky received by defendant from this plaintiff, nor as to the amount due thereon, provided said defendant is not entitled to a rebate of five dollars per barrel upon the whisky furnished by plaintiff to defendant. That the said claim for a rebate is based upon the said alleged modification of the original contract (Plaintiff's Exhibit 'A') which said alleged modified contract is alleged to have been made by one F. A. Carter, acting for and on behalf of said plaintiff, which said modified contract was offered in

evidence by the defendant, and is marked Defendant's Exhibit 'B.' It was further agreed that the questions at issue in this case were and are: 1. Did said F. A. Carter have authority from this plaintiff to make said modification of said original contract? 2. If he had such authority, did he make such modification of said contract? and 3. If the said Carter did make such a contract and had authority so to do, did it apply to the goods furnished by the plaintiff to the defendant?"

1. It is contended on the part of the appellant that if any rebate be allowed the defendant it was to be on the whiskies furnished by the Daviess County Distilling Company, and not by the appellant, the Glenmore Distilling Company. It appears that there were three Kentucky corporations engaged in the same line of business, the plaintiff company, the Daviess County Distilling Company, and the Eagle Distilling Company; that a Mr. R. Monarch, of Owensboro, Kentucky, was the president of all three companies, and Mr. F. A. Carter was an agent of said companies to place their whiskies with dealers on this coast. Mr. Carter was called as a witness on behalf of the defendant, and testified that he signed the contract known as the modification, and mentioned in the foregoing stipulated facts, and that at the time he knew of the previous contract of June 4, 1890; that he was in the employ of the companies mentioned at the time he signed the said modification; that Mr. Monarch, the president of these companies, sent him to San Francisco for the purpose of representing such corporations, and he came out here for the purpose of selling the whiskies to the trade on this coast, and more specially to Mr. Craig, and to negotiate with him for the handling of their whiskies. Before leaving Kentucky, he testifies, he had a talk with Mr. Monarch relating to the contract which he subsequently made with Mr. Craig, and Mr. Monarch authorized him to make such contract, and he made it in pursuance of such authority. The contract was made for the purpose of guaranteeing to Mr. Craig the price of their whiskies, and it had reference to the whisky that he had already bought under the contract of June 4th. He reported to Mr. Monarch, when he went back to Owensboro, that he had made this modification contract with Mr. Craig, and he said it was all right as he had made it. On cross-ex-

amination, the witness testifies that Mr. Monarch himself proposed the agreement, and that it was intended to modify the price of all whiskies that had already been delivered under the contract of June 4th. It was done in order to induce Mr. Craig to handle their whiskies on this coast. They concluded it was the best thing for them to do, and in consequence of that understanding the modified agreement with Mr. Craig was entered into; and it was understood between them that every barrel of whisky that Mr. Craig bought from them would be on the basis of that guaranty. Defendant Craig testifies that the modification contract was made with him by Mr. Carter in San Francisco; that Mr. Carter at the time stated that he had authority to make such contract. It had reference to all the whisky ordered and purchased from these three companies. He states that he had at that time been purchasing whiskies from other people, and Mr. Carter came out here to see him about it. Subsequently, the agreement entered into by Carter with the defendant was repudiated by his principals, and it was admitted at the trial that Mr. Monarch, the president of such companies, would testify, if present, that he did not give Mr. Carter authority to enter into such modification contract for the rebate.

At the close of the trial findings were waived, and the court, upon the evidence introduced, ordered judgment for the amount aforesaid, which in effect found for the defendant in favor of the rebate stated, as against the amount of whiskies furnished by the plaintiff company. There was a substantial conflict in the testimony, and under the well-established rule this court will not interfere with the conclusion arrived at by the trial court, but will allow the judgment to stand.

2. Appellant further contends that the court erred in refusing to permit the plaintiff to read the depositions of the witnesses Monarch and Littell. A commission for taking their testimony, it appeared, was directed to Mr. Brown, notary public, Owensboro, Kentucky, and the certificate appended to the depositions failed to state that Mr. Brown was a notary public. Upon objection of the defendant the deposition was excluded. The record fails to show what testimony the depositions contained—whether it was material or relevant—and it is quite

impossible to determine whether the ruling of the court excluding the depositions worked any prejudice to ,the plaintiff, even if properly taken and admissible under the stipulation. Besides, defendant's counsel at the trial admitted that Mr. Monarch would testify that he gave no authority to Carter to enter into the modified agreement with the defendant. It does not appear, therefore, that the plaintiff was injured at all by excluding the deposition, and the rule is universal that unless some prejudice results from the action of the trial court its ruling in such case will not be reversed simply on the ground of being erroneous. (Code Civ. Proc., sec. 475.)

The judgment and order denying a new trial are affirmed.

Garoutte, J., and Harrison, J., concurred.